### WALTER ZINN ET AL. V. S. A. BAXTER ET AL.

RIGHT OF STOCKHOLDER WHO LOST HIS STOCK THROUGH THE FRAUDULENT ACTION OF THE BANK DIRECTORS TO SUE THEM.

The comptroller of currency finding the capital stock of a national bank to be impaired, ordered an assessment of the stock to make good such impairment. Z, who was a stockholder in such bank was unable to meet such assessment, and being in default, his stock was sold at assessment sale. The capital stock was thus impaired by the officers and directors, through their negligence, incompetency and dishonesty. Z, brought an an action against such officers and directors, on behalf of himself and all other stockholders who desired to become parties thereto, to recover for the loss and damage to said bank and its shareholders and creditors, sustained by reason of such misconduct and mis-management of such officers, for which he asked judgment for himself and the other shareholders: *Held*, that such action could only be maintained for the benefit of the bank, as the bank was the only beneficiary; and that this claim against the defendants was an asset of the bank, and Z, ceasing to be a stockholder at the time of the commencement of this action, he was in no wise interested in the assets of the bank, either as a creditor of the bank, or as an owner of its stock; and, therefore, his right to bring and maintain this action terminated.

ERROR to the Court of Common Pleas of Allen county.

NORRIS, J.

The plaintiff in error, Walter Zinn, who was the plaintiff below, sets forth the following facts in his petition, and upon these facts he rests his action against the defendants below, who are the defendants in error here.

He says that on and prior to January 1, 1893, the First National Bank of Lima, Ohio, was and is organized and incorporated and doing business under the laws of the United States. That on and prior to January 1, 1893, he was the owner of 100 shares of the capital stock of said bank for which he paid the sum of thirteen thousand dollars ($13,-

000), and that he continued to be the owner of said stock until some time in 1895, when his shares were sold for the non-payment of the assessment thereon. The capital stock of this bank was one hundred thousand dollars ($100,000), and he gives the names of the directors and of the officers of said bank, who were duly elected and chosen and served as such during the years 1893 and 1894, and gives the periods between which each served; R. C. Eastman is made a party to the action by reason of having been made executor of the estate of J. M. Coe, deceased, who during a portion of the period named was one of the directors of said bank.

The plaintiff says, that the officers and directors of this bank knowingly permitted the total liabilities to said bank of a corporation known as the Monroe Manufacturing Company, of this city, for money borrowed, and including the liabilities of the individual members of the said Monroe Manufacturing Company, to exceed one-tenth part of the capital stock of said bank actually paid in; and that the comptroller of the currency found the capital impaired on and prior to October 1, 1894, and ordered an assessment of one hundred per cent. (100%) on its stock to be made, and such assessment was made.

That the indebtedness of the Monroe Manufacturing Company, and its members, to said bank, which arose and accumulated from about July 1, 1893, to November 1, 1894, for money borrowed, amounts to a total of $145,150.00, and all without security of any kind. The amount and date of each loan is set out in the petition, and he says that at the respective date of these loans the manufacturing company and the bank were both insolvent, and that the officers and directors of the bank knew it, or by inquiry which it was their duty to make, could have known of the insolvent condition of these institutions.

The plaintiff alleges the facts in his petition, which warrants the assertion therein made that this indebtedness of the Monroe Manufacturing Company and its members to said bank was contracted from time to time with the express or constructive knowledge and assent of these officers and directors of the bank, and that they knew that its money was thus being loaned without security of any kind to an insolvent concern.

That during all the time that this liability was accumulating the directors knowingly and carelessly suffered the president and cashier to manage the business affairs of the bank without any supervision or investigation, and that the making of these loans to said manufacturing company was the result of their negligence, incompetency and dishonesty.

That the cashier of the bank willfully concealed to the aggregate of over $80,000 worthless drafts and notes of said manufacturing company, upon which the money had been advanced by the bank and which, when sent for collection, went to protest and were returned.

That for those years, 1893 and 1894, the directors knowingly and negligently failed to require the cashier to execute his bond as such cashier in accordance with the by-laws of said bank.

That the cashier unlawfully and falsely, and to conceal the liabilities of said bank, falsely marked certain valid and unpaid certificates of deposit as void or paid; and much else of like import is set out in the petition at length.

The plaintiff says that during this time he lived in Columbus and had no knowledge, either directly or indirectly, of these gross frauds

and of this careless management, and of the enormous sums of money thus loaned, until October 4, 1894, he received notice from the president of the bank that an assessment had been made upon his stock, and that its payment was required.

And he says; that all of this impairment and misapplication of the capital stock of this bank and of its profits, and its consequent insolvency and collapse, and the requirement of its re-habilitation by the 100% assessment upon its capital stock, was occasioned by the negligence of the defendants, the officers and directors of said bank, and their mismanagement and violation of their duty and the law. And that by reason of these omissions and commissions of these defendants, the officers and directors of said bank, he lost his stock; he was not able to pay the assessment, and his stock was sold by order of the comptroller of the currency.

Plaintiff says that since that sale he has served notice at various times on the officers and directors of said bank requiring the payment of the value of his stock which he says was up to the time it was impaired by the acts recited, worth $13,000, or that the directors of said bank cause action to be brought against the defendants, who had thus been delinquent, with a view that this sum be made good; but to all this no attention has been paid and no action has been taken.

The efforts of the plaintiff to thus induce proceedings against the defendants upon the part of said bank and its officers being futile, he says that he now brings and prosecutes this action on behalf of himself and all other stockholders who desire to become parties thereto. And he asks that an account be taken of the loss and damage to said bank and its shareholders and creditors, sustained by reason of this misconduct and mismanagement of the defendants, and that he have a judgment for his thirteen thousand dollars against the defendants and each of them, and for a judgment for the other shareholders of the bank in such sums as the court may determine.

Tendering the facts in substance as I have recited them, and making parties to the action each officer and each director of the bank, whose service covered the years 1893 or 1894, or any part of those years, and making the bank itself also a party, the plaintiff seeks the relief prayed for in his petition.

To this petition each of the defendants filed a demurrer. The grounds of each demurrer are:

*First :*  That plaintiff has not legal capacity to sue.

*Second :*  That several causes of action against several defendants are improperly joined.

*Third:*  That said petition does not state facts sufficient to constitute a cause of action.

The first and third grounds of these respective demurrers to the petition the court below sustained; neither party pleaded further, and the court entered judgment on the demurrer, dismissed the plaintiff's petition and adjudged the costs against him.

To this ruling and judgment of the court below the plaintiff prosecutes error in this court; and assigns as his reasons for reversal, that the common pleas erred in sustaining the first and third grounds of the defendants' demurrers, and in dismissing his petition and entering judgment against him.

There is little room for controversy as to what relationship exists between a shareholder in a corporation and a corporation in which he

owns the stock, and between the officers and board of directors of the corporation who control its management and have custody of its property and assets, and their duties to the corporation and its shareholders.

The first purpose of its capital stock and the amount paid in by its shareholders, is to meet the liabilities of the corporation and to pay its debts, and beyond the face value of its stock, representing the amount paid in for this purpose assessments may be made upon the stock to an extent fixed by the law which creates the corporation, all to meet and discharge its liabilities. And this burden follows the stock wherever it may go, and postpones every other claim upon the assets of the corporation, and is paramount to every right which stock may avouch to one who owns it.

Its paid up capital is a fund which belongs not to the shareholders, but to the corporate body which the law has created, the corporate entity which the law has clothed with powers and defined them, and upon which the law has enjoined responsibilities and determined them.

The ownership of stock, says Judge Boynton, in the case of Jones v. Davis, 35 O. S., 477, "involves the right to participate in dividends declared from the profits of the business, and upon dissolution of the corporation to a proportionate share of the corporate funds remaining after payment of the debts of the corporation. The right of the shareholder does not enable him to withdraw any portion of the capital stock of the corporation from its control, nor to exercise any authority over it further than to participate to the extent of his stock in the election of a board of managers charged with the conduct of the business for which the corporation was created."

Between the shareholder and the directors subsists the relation of trustee and *cestui que trust*. It is the duty of the directors, says Judge Williams in the case of Rouse, Trustee v. Bank, 46 O. S., 502, "to so administer the trust as to best promote the interests of the shareholders, to pay their appropriate dividends from time to time and upon the dissolution of the corporation to distribute to them their respective shares of the corporate property after the payment of its debts."

And we think these cases put the matter very plainly. A stockholder in a corporation does not stand to the corporation in the relation of a creditor. One of the objects of the creation of a corporation is to obtain credit; its very creation is of itself a pledge of its capital stock to its creditors. While its creditors may in equity follow the corporate property which has been deflected from the primary object of paying its debts, up to the threshold of a *bona fide* purchaser for value without notice, and enforce his lien upon it; a stockholder has no equity as an individual, but his rights as such stockholder must be worked out in the first instance through the corporation itself. Its rights are but incidentally his rights, such rights as are communicated by his relation to the corporation as an owner of its stock. And if this right—which is a mere incident of his stock—has been lost to him by the law; if his stock which carries with its burdens as well as its benefits, has through legal channels passed out of his hands and his rights are thus by the law lost to him, equity cannot restore them, and he becomes a mere stranger to the corporation and its burdens and its benefits. His relation to the corporation which existed only by virtue of his stock, has ceased and determined.

So in this case, the position of counsel that this plaintiff having once been a stockholder in this bank, and having parted with its stock through the agency of the law, still has rights which in equity can and should be saved to him in an action of the character at bar, is untenable.

There can be but little doubt that if this plaintiff, supplemental to the facts set up in his petition, had continued to the present time a stockholder in the defendant corporation, that the *status* for recovery would appear in this action. But his chiefest claim is that he ceased to be a stockholder from the causes assigned in his pleading. That the necessity for an assessment of the capital stock existed; that this was determined and the assessment was ordered to be made and was made by lawful authority; that he was unable to meet the demand which his stock thus made upon him, and that by legal process, the stock was sold to meet this assessment and his stock was thus lost to him; all by the fault of the defendants, not in robbing him of his money, but in allowing the bank to be looted and its capital dissipated.

His story, which is admitted by the demurrers to be true, is to the effect and to no other, that these defendants are indebted to the bank because this condition of the bank arose through their fault and negligence, and with their knowledge and assent, and that they are liable to the bank, and incidently through its directors, who are the trustees of its fund for the benefit of its stockholders, to those who own the shares of its stock. And that he is not one of those who own any of the shares of its stock.

Now, that is the case made in the petition. It is only for the benefit of the bank that the suit could be maintained, and the bank is the only beneficiary. It is only by the bank or upon the refusal of its officers, and upon it being made to appear that otherwise there would be a failure of justice, then by one or more of its stockholders, for its benefit, that the action can be maintained, for the reason that the cause of action belongs to the bank.

There is no doubt that by this petition the defendants are liable to the bank, and only to the bank. There can be no double liability, and if liable to the bank, they can not be liable to the plaintiff. This claim against the defendants is an asset of the bank, and as such might well be considered in measuring the value of stock at an assessment sale. In the assets of the bank this plaintiff at the time of the commencement of this action, was in no wise interested, either as a creditor of the corporation, or as an owner of its stock.

This position appears impregnable, both in reason and precedent; the books are full of cases sustaining it, notably among those furnished in the brief of counsel which are at hand, (18 At. R., 824; 23 At. R., 224; 28 P. R., 788; 21 P. R., 894; 30 P. R., 46; 49 N. W. R., 197 45 Fed. R., 668; 58 Fed. R., 986, and other cases.)

So that whatever may be his redress, the one here sought by the plaintiff is not the remedy. We think the demurrers were properly sustained, and find no error in the records to the prejudice of the plaintiff in error. The judgment of the common pleas is therefore affirmed at the costs of plaintiff in error, and the case is remanded for execution.

*John P. Wentzel* and *P. H. Kumler, Ridenonr & Halfhill,* for plaintiff in error.

*H. P. Williamson, Ritchie & Ritchie, Wheeler & Brice,* for defendants in error.